| | | |
|---|---|---|
| Svetoslav Dorobanov, Paul Jovenich, and Randy Binning, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 17 CV 01025 |
| v. | ) ) ) | Judge Edmond E. Chang |
| Caesars Entertainment Corporation, Caesars Entertainment Operating Company, Inc., Harrah's Illinois Corporation d/b/a Harrah's Joliet Casino Hotel, WMS Gaming, Inc., David Sandack, Emmanuel Flores, and Various Unknown Current and Former Employees of the Illinois Gaming Board, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Svetoslav Dorobanov, Paul Jovenich, and Randy Binning filed this lawsuit against casino-gaming corporations Caesars Entertainment Corporation, Caesars Entertainment Operating Company, Inc., Harrah's Illinois Corporation d/b/a Harrah's Joliet Casino, WMS Gaming, Inc.; two Illinois State Police Officers, David Sandack and Emmanuel Flores; and a group of unknown current and former employees of the Illinois Gaming Board.[1] Plaintiffs allege civil rights violations

---

[1] In light of a bankruptcy proceeding, the Court dismissed Caesars Entertainment Operating Company, Inc. and Harrah's Illinois Corporation, without prejudice to reinstatement after the bankruptcy. R. 39. The Court dismissed the Illinois Gaming Board and the Doe Defendants without prejudice pursuant to Federal Rule of Civil Procedure 4(m) for lack of service. R. 41. The parties stipulated to the dismissal of WMS Gaming, Inc., as Bally's Gaming, Inc. is WMS's corporate successor. R. 48. This leaves Caesars

under 42 U.S.C. § 1983 and violations of Illinois common law.[2] Defendants jointly moved to dismiss [R. 30, 32, 34][3] the claims on various grounds, including that Plaintiffs missed filing before the statute of limitations expired on the § 1983 claim. For the following reasons, Defendants' joint motion to dismiss is granted in part, specifically against the § 1983 claim based on the limitations defense. With the federal law claim out of the picture, the Court relinquishes supplemental jurisdiction over the state law claim.

**I. Background**

In deciding motions to dismiss, the Court accepts as true Plaintiffs' factual allegations and draws all reasonable inferences in Plaintiffs' favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010). Plaintiffs are professional gamblers from Las Vegas, Nevada. R. 1, Compl. ¶¶ 4, 13. In April 2013, Binning learned from other gamblers that keno machines at various Harrah's casinos were making higher-than-normal payouts. *Id.* ¶¶ 14, 15. He traveled to Harrah's Casino in Joliet, Illinois, where he won a large sum of money playing the keno machines. *Id.* ¶ 14. Binning learned about other Harrah's properties in Mississippi that offered similar types of

---

Entertainment Corporation, Bally Gaming, Inc., and Officers Sandack and Flores as defendants in this action.
    [2]This Court has subject matter jurisdiction over the § 1983 claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law malicious prosecution claim under 28 U.S.C. § 1367(a).
    [3]Bally moved to dismiss [R. 30], Flores and Sandack moved for leave to request to join Bally's motion [R. 32], which the Court granted [R. 40], and Caesars Entertainment Corporation adopted and incorporated Bally's motion into its own motion to dismiss [R. 34].

games, and left Joliet to play keno machines at three Harrah's casinos in Mississippi.[4] *Id.* ¶ 16.

Binning shared the information about the higher-than-usual payouts from the Joliet keno machines with his friend Dorobanov. Compl. ¶ 18. Dorobanov in turn shared the information with his friend Jovenich. *Id.* Not surprisingly, Dorobanov and Jovenich travelled to the Harrah's in Joliet and played the keno machines until the casino turned off the machines. *Id.* Dorobanov and Jovenich both won a large amount of money playing the keno machines. *Id.*

The better-than-normal payouts that Plaintiffs received resulted from the way the keno machines were programmed by the manufacturer of the machines, WMS Gaming. Compl. ¶ 15. Plaintiffs did not receive inside information from WMS or do anything illegal to receive the higher payouts from the keno machines. *Id.* ¶¶ 15, 28. A July 2013 WMS report sent to the Mississippi Gaming Commission confirmed that there was an inadvertent coding error in the keno machines and there was no evidence any WMS software engineer was in contact with any casino patron (like Plaintiffs) who had won a significant amount of money on the keno machines. *Id.* ¶¶ 20, 23.

---

[4]An arrest warrant was issued for Binning in Mississippi in June 2013, and he was indicted there in February 2014. Compl. ¶¶ 21-22. The Mississippi Circuit Court dismissed the charges against Binning in June 2015, holding that Binning's actions were not criminal under Mississippi law. *Id.* ¶ 29. Based on what he believed to be the wrongful charges, arrest, and prosecution in Mississippi, Binning filed a case similar to this one in the Northern District of Mississippi. Complaint, Binning v. Bally Gaming, Inc. et al, No. 3:16-cv-146-NBB-RP (N.D. Miss. June 27, 2016), ECF No. 1. In January 2018, the district court there granted summary judgment against the claims and dismissed the case. *Binning v. Bally Gaming, Inc.*, 2018 WL 296782, at *6 (N.D. Miss. Jan. 4, 2018).

Despite the WMS report's conclusion that no casino patrons received inside information, the Illinois Gaming Board investigated Plaintiffs for their substantial winnings from the Joliet keno machines. Compl. ¶¶ 25, 35. The exculpatory WMS report does not seem to have been considered in the Illinois Gaming Board investigation into Plaintiffs. *Id.* ¶ 25. Plaintiffs assert that this is probably because WMS and Caesars misled Investigator Sandack about the report. *Id.* Plaintiffs also allege Sandack and Flores did not conduct the investigation of Plaintiffs neutrally. *Id.*

Plaintiffs were indicted in Will County, Illinois on March 6, 2014. Compl. ¶ 1. Arrest warrants were issued the same day. *Id.* Plaintiffs were charged with between 14 to 22 *felonies*, including violations of various computer tampering and computer theft statutes, rather than less-serious violations of the Illinois Riverboat Gambling Act, 230 ILCS 10/1 et seq. *Id.* ¶¶ 1, 22. The complaint alleges that Plaintiffs were indicted and prosecuted because of all Defendants' actions, specifically because Defendants never told the prosecutor, judge, or grand jury the truth: that Plaintiffs did nothing illegal while playing the keno machines in Harrah's casino. Compl. ¶ 28. The prosecution ended when the Will County judge granted Plaintiffs' motion for a directed verdict at the close of the State's case on February 7, 2015 and March 5, 2015. *Id.* ¶ 1.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is

4

entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Rules 8(d) and 10(b)

Before discussing the fatal problem with the complaint (its untimeliness), it is worth noting that one of the grounds raised by the defense would not have warranted a dismissal. According to the defense, the complaint violates Federal Rules of Civil Procedure 8(d) and 10(b). Rule 8(d) requires each allegation in the complaint to be "simple, concise, and direct." Rule 10(b) mandates that a party state

5

its claims or defenses in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." The Seventh Circuit has noted that the "primary purpose of these rules is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). "Dismissal of a complaint on the ground that it is unintelligible is unexceptionable" because it "fails to give the defendant the notice to which he is entitled." *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001) (cleaned up). Dismissal of a complaint, however, is inappropriate "merely because it contains repetitious and irrelevant matter, a disposable husk around a core of proper pleading." *Id.*

Defendants argue that it would be "a practical and logistical nightmare for each defendant" to answer the complaint as written because it is not clear which allegations are leveled against which Defendants. R. 31, Defs.' Br. Supp. Mot. Dismiss at 5-6. It is true that the complaint is verbose, contains unnecessary rhetorical questions (it would be the rare situation indeed for a rhetorical question to be properly posed in a complaint), and could more clearly state the facts and legal claims. For sure, the Court does not condone this type of pleading. Having said that, Defendants are on notice of the legal claims Plaintiffs brought against them and are able to sufficiently defend against them, which is the bottom line. Despite their protests, Defendants were able to distill the essence of Plaintiffs' claims. R. 49, Defs.' Reply Supp. Mot. Dismiss at 4. ("Each [Plaintiff] supposedly has two separate causes of action (a Section 1983 claim and a malicious prosecution claim)."). So the

6

complaint, as labyrinthine as some of the allegations are, fairly put Defendants on notice of the claims. The Rule 8(d) and 10(b) arguments are rejected.

## IV. False Arrest Claim is Untimely

What the complaint does not survive, however, is the statute of limitations. It is generally true that the statute of limitations is an affirmative defense, so "plaintiffs need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). The Seventh Circuit has noted that dismissal under Rule 12(b)(6) on the basis of the statute of limitations is "irregular," because the defendant bears the burden of proof. *United States v. Northern Trust Co.,* 372 F.3d 886, 888 (7th Cir. 2004) (citing Fed. R. Civ. P. 8(c)). But, where a plaintiff has pleaded himself out of court by alleging "an impenetrable defense to what would otherwise be a good claim," then the dismissal is actually based on Rule 12(c) (judgment on the pleadings). *Richards v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012). Where, as here, the relevant dates of the events giving rise to the claims are clearly set out in the allegations in the complaint, dismissal based on the statute of limitations can be appropriate. *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009) ("We find it appropriate here to consider the statute of limitations because the relevant dates are set forth unambiguously in the complaint."). And Plaintiffs do not specify what discovery they would need to resist the limitations argument (they do point out the need for discovery in responding to some of the other defense arguments, but not on the limitations defense).

In this case, Plaintiffs premise their 42 U.S.C. § 1983 claim on false arrest under the Fourth Amendment (§ 1983 supplies the cause of action, and the Fourth Amendment supplies the substantive right).[5] The statute of limitations for claims under § 1983 is drawn from "the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred." *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). Illinois has a two-year statute of limitations for personal-injury actions from when the cause of action accrued. 735 ILCS 5/13-202; *see also Woods v. Illinois Dept. of Children and Family Servs.*, 710 F.3d 762, 768 (7th Cir. 2013) ("[T]he limitations period applicable to *all* § 1983 claims brought in Illinois is two years[.]").

A claim for false arrest accrues "at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397 (2007); *see also Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013) (holding that a false arrest claim is an exception to the rule that a § 1983 claim accrues when a plaintiff knows or has reason to know of the injury forming the basis of his action, rather, the statute of limitations begins to run when the arrestee is detained pursuant to legal process). Plaintiffs' complaint states that Plaintiffs were indicted and an arrest warrant was

---

[5]The complaint asked to preserve a federal claim for malicious prosecution, brought via § 1983, pending the Supreme Court's decision in *Manuel v. City of Joliet*, 136 S. Ct. 890 (2016). Compl. ¶ 37 n.7. But the Supreme Court has since decided *Manuel*, and did so on Fourth Amendment grounds, rather than address malicious prosecution under some other substantive right. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 922 n.10 (2017). Nor do Plaintiffs provide actual argument on this claim in their response brief. *See* Pls.' Resp. Br. at 14. It is worth noting too that Plaintiffs do not allege that they were detained before trial, that is, it appears they did make bail. Compl. ¶ 1. The absence of pretrial detention would undermine a due process claim. *See Alexander v. McKinney,* 692 F.3d 553, 557-58 (7th Cir. 2012). So the only basis for Plaintiffs' § 1983 claim is false arrest under the Fourth Amendment. Compl. ¶ 37.

8

issued on March 6, 2014. Compl. ¶ 1. When a person is arrested on a warrant issued after the grand jury indictment, the arrest is pursuant to formal legal process. *Bianchi v. McQueen*, 818 F.3d 309, 321 (7th Cir. 2016).[6] So the detention pursuant to legal process here began on March 6, 2014, well over two years before Plaintiffs filed the complaint on February 7, 2017.

Plaintiffs advance no legal argument in their response to the dismissal motion based on the case law governing the statute of limitations. Instead, the only thing that Plaintiffs argue is that it would be "unjust" to dismiss their claims against Flores and Sandack because their lack of objectivity was "unknown and unknowable" to Plaintiffs until the end of the state prosecution. R. 46, Pls.' Resp. Br. at 14. That is all. No case is cited for this one-sentence argument. No explanation is offered for the contention. Even reading the one sentence as generously as possible,

---

[6]The Seventh Circuit held in *Bianchi* that a false arrest claim based on a warrant issued after a grand jury indictment (and thus pursuant to legal process) is in fact a claim "for malicious prosecution, which does not implicate any interests protected by the Fourth Amendment." 818 F.3d at 321. The Supreme Court has since held that a Fourth Amendment claim can survive past the start of legal process if the process failed to establish "probable cause to believe [the arrestee] committed a crime." *Manuel*, 137 S. Ct. at 919-920. The Court declined to decide when the statute of limitations of a § 1983 suit challenging post-legal process pretrial detention claim accrues, but reaffirmed that a false arrest claim "accrues when legal process commences." *Id.* at 921 (citing *Wallace*, 549 U.S. at 389). So the false arrest claim here accrued when the arrest warrant was issued pursuant the indictment on March 6, 2014, which Plaintiffs allege lacked probable cause. Compl. ¶ 1.

It is true that courts typically peg the accrual date of a false arrest claim on when the plaintiff is arraigned. *See, e.g.*, *Bielanski v. County of Kane*, 550 F.3d 632, 368 (7th Cir. 2008). Here, the complaint does not state the exact date Plaintiffs were arraigned. But it does say that the state court judge dismissed charges against them pursuant to a directed verdict on February 7, 2015 and March 5, 2015. Compl. ¶ 1. Plaintiffs were indicted and arrested on March 6, 2014. *Id.* ¶ 1. With an arrest date of March 6, 2014, and acquittal dates at a trial in February and March 2015, it is impossible for the arraignment to have been held after February 7, 2015 (two years before the February 7, 2017 filing of this complaint).

9

Plaintiffs have forfeited any response to the limitations argument on the false arrest claim.[7]

Even if the Court were to try to construct the argument for Plaintiffs, it would fail. Presumably, Plaintiffs would argue that the limitations period should be equitably tolled, either because Defendants "actively misled the plaintiff, or if the plaintiff has been prevented from asserting … rights in some extraordinary way … ." *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000); *Rosado v. Gonzalez*, 832 F.3d 714, 717 (7th Cir. 2016). Not only would Plaintiffs have to show either active efforts to stop them from filing on time or some other extraordinary obstacle, they also would have to show due diligence in filing the suit after the obstacle to filing was out of the way. *Rosado*, 832 F.3d at 717. Nothing in Plaintiffs' response or in the complaint points to any *active* efforts to prevent Plaintiffs from filing suit after their arrest in March 2014. Instead, the response cites to a few paragraphs in the complaint, which allege that Sandack and Flores were biased in favor of Caesars and WMS, and that Plaintiffs did not know that until the state trial. Pls.' Resp. Br. at 14; Compl. ¶¶ 24, 26, 30, 39. It was an unexpected revelation, Plaintiffs contend, that (1) Sandack testified at trial that he and other Gaming Board agents are permanently assigned only to Harrah's Joliet Hotel and Casino; (2) at trial Sandack appeared ignorant of the WMS Report denying collusion between their software engineers and "persons of interest" at trial; and (3) Sandack claimed (at some point) that he had no

---

[7]Plaintiffs themselves point out the reason why they did not fight the limitations argument on the false arrest claim: they believe that the "malicious prosecution claim will probably cover most of plaintiffs' injuries at the hands of the defendant law enforcement officers." Pls.' Resp. Br. at 14.

10

knowledge of a WMS report about possible underpayments to casino patrons. Compl. ¶¶ 24, 26, 30, 39. None of these circumstances justifies the application of equitable tolling. Plaintiffs knew from day one of the state case that Plaintiffs had not illegally obtained inside information from WMS, and going forward in the prosecution, there is no reason to think that Plaintiffs did not obtain the usual criminal-case discovery and have access to all the usual tools (including subpoenas) of criminal-case discovery. So discovering those supposedly revelatory facts before trial would have taken no extraordinary effort. What's more, even after the trial—where these facts were allegedly disclosed—Plaintiffs still waited almost two years to file this lawsuit. But equitable tolling does *not* reset the limitations clock: "instead, the doctrine requires that the plaintiff get the litigation under way promptly after the circumstance justifying delay is no longer present." *Rosado*, 832 F.3d at 717 (cleaned up) (quoting *Ashafa v. City of Chicago*, 146 F.3d 459, 464 (7th Cir. 1998)). Waiting almost two more years to file suit after the trial is not prompt.[8] This was the best the Court could do to make Plaintiffs' argument for them, and it falls short of triggering equitable tolling. The false arrest claim must be dismissed.

---

[8] In unusual circumstances, some judges in this District have applied the discovery rule to time-barred false arrest claims. *See Booker v. City of Chicago*, 2011 WL 6152290, at *3 (N.D. Ill. Dec. 6, 2011) (Hibbler, J.) (applying the discovery rule and holding the statute of limitations accrued when the plaintiff learned the defendant police officers manipulated evidence in an effort to frame him and actively concealed their misconduct); *Johnson v. Garza*, 564 F. Supp. 2d 845, 851-52 (N.D. Ill. 2008) (Shadur, J.) (holding the statute of limitations began running when the plaintiff discovered the search warrant whose execution gave officers probable cause to arrest him had been obtained by police officers' false statements to a magistrate judge). The bare allegations in Plaintiffs' complaint that Sandack and Flores were biased and the assertion that the bias was unknowable does not come close to approaching this level of concealment. And, in any event, Plaintiffs have not made this argument.

## V. Supplemental Jurisdiction

With the § 1983 claim out of the case, all that remains is Plaintiffs' state law malicious prosecution claim. Now that the federal claim has been dismissed, the usual presumption arises: "when the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (*per curiam*) (citing cases). Indeed, this presumption is statutorily expressed in 28 U.S.C. § 1367(c)(3), which provides for the discretionary relinquishment of jurisdiction over state claims when the claims providing original jurisdiction (here, federal-question jurisdiction) have been dismissed. This general rule has three exceptions: "when the refiling of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007).

None of the exceptions applies here. First, the relinquishment will not cause an additional statute of limitations bar because of Illinois's savings statute. 735 ILCS 5/13-217. Second, this case is at the pleading stage, and therefore substantial judicial resources have not been consumed on the state law claim. Finally, it is not crystal clear how the state law claim should be resolved. Indeed, the Illinois state court system should address the intersection of Plaintiffs' malicious prosecution claim with the Illinois Riverboat Gaming Act and related computer tampering and computer theft statutes. So the usual presumption will be followed here: this Court

relinquishes supplemental jurisdiction over the state law malicious prosecution claim, without prejudice to refiling in state court.[9]

## VI. Conclusion

For the reasons discussed above, Plaintiffs' false arrest claim under 42 U.S.C. § 1983 is dismissed. Because there are no remaining federal claims, the Court relinquishes jurisdiction over the related state law claim.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 27. 2018

---

[9]It is worth noting that diversity jurisdiction does not apply. Plaintiffs are citizens of Nevada, Compl. ¶ 4, and Caesars Entertainment Corporation has its principal place of business in Nevada, *id.* ¶ 6, making it too a citizen of Nevada. Also, WMS is a Nevada citizen because it is a Nevada corporation and has its principal place of business there. *Id.* ¶ 8.